**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOSE CORONA CORONA,               :
                                  :
                                  :        CIVIL ACTION
        Plaintiff,                :
                                  :        No. 21-00651
        v.                        :
                                  :
PARADOCX VINEYARD, LLC et al.     :
                                  :
        Defendants.               :

## EXPLANATION AND ORDER

Jose Corona Corona ("Corona Corona") brings this individual action against Paradocx Vineyard, LLC and its employees (collectively, "Paradocx"), alleging that Paradocx violated the Fair Labor Standards Act ("FLSA") and Pennsylvania state wage laws by failing to pay required wage rate, overtime, and transportation and subsistence costs.

The parties reached a settlement before Paradocx responded to the Complaint. On June 26, 2021, the parties filed a first joint motion for approval of their proposed settlement agreement (ECF No. 9). On July 20, 2021, I denied that motion without prejudice on the grounds that (1) the parties failed to provide information regarding the amount of damages Corona Corona believes he is owed, thus preventing the Court from determining whether the settlement was fair and reasonable, and (2) the release provision was overly broad (ECF No. 10). Before me now is the parties' second joint motion for approval of their revised proposed settlement agreement.

## I.    BACKGROUND

The H-2A visa program allows employers to hire foreign workers to perform temporary agricultural labor in the United States. Compl. ¶ 23. For portions of 2018 and 2019, Paradocx hired Corona Corona as a temporary agricultural worker through the H-2A visa program. *Id.* ¶

1

11. Corona Corona alleges that, during this time period, Paradocx violated FLSA by failing to pay him the wages, overtime, and transportation and subsistence costs required by the H-2A visa program. *Id.* ¶¶ 36–44.

The H-2A visa program requires employers to pay their workers "at least the adverse effect wage rate (AEWR), the prevailing wage rate, or the minimum wage rate—whichever is highest—for the job." *Id.* ¶ 26. From January 9, 2019 to January 1, 2020, the AEWR was $13.15 per hour in Pennsylvania. *Id.* ¶ 28. Corona Corona alleges that from February 9, 2019 to October 30, 2019, Paradocx paid him $12.19 per hour—$0.96 less than the adverse effect wage rate. *Id.* ¶ 37.

Furthermore, the H-2A visa program requires employers to comply with applicable federal law, including FLSA requirements to pay workers the appropriate minimum wage and overtime wage unless the work done falls within an exemption. *Id.* ¶ 26. Although Paradocx is an employer within the meaning of the FLSA, Corona Corona was an employee within the meaning of the FLSA, and a relevant portion of Corona Corona's work for Paradocx fell within no minimum wage nor overtime exemptions, Corona Corona alleges that Paradocx failed to pay Corona Corona minimum wage and overtime. *Id.* ¶¶ 46–54.

Finally, the H-2A visa program requires employers to pay for reasonable costs of inbound and outbound transportation between the worker's hometown to the place of employment, as well as subsistence if the worker completes a certain percentage of his or her contract period. *Id.* ¶ 26. For both Corona Corona's 2018 and 2019 work terms, Paradocx only paid Corona Corona's inbound and outbound flight expenses. *Id.* ¶¶ 40–42. Corona Corona alleges that, in both 2018 and 2019, Paradocx failed to compensate him for additional transportation and subsistence costs, including costs of travel from his hometown to Monterrey and the food and

lodging costs of staying in Monterrey while interviewing for and awaiting his visa. *Id.* ¶ 43.
Failure to compensate Corona Corona for these expenses caused his first week's wages—during
both the 2018 and 2019 work terms—to allegedly fall below the minimum wage required by law.
*Id.* ¶ 44.

## II.    APPROVAL OF FLSA SETTLEMENT

"Because of the public interest in FLSA rights, there are only two ways that FLSA claims
can be settled or compromised by employees: (1) a compromise supervised by the Department of
Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29
U.S.C. § 216(b)." *Adams v. Bayview Asset Management, LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa.
2014) (Brody, J.) (citing *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th
Cir. 1982)).

When the parties request that a district court approve a settlement, as a threshold matter,
the court must determine whether the settlement resolves a bona fide dispute. *Kraus v. PA Fit II,
LLC*, 155 F. Supp. 3d 516, 523 (E.D. Pa. 2016) (Robreno, J.). Then, the court conducts a "two-
part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s),
and (2) the agreement furthers the FLSA's implementation in the workplace." *Id.*

## A.    The Proposed Settlement Resolves a Bona Fide Dispute

As a threshold matter, this settlement resolves a bona fide dispute. "A dispute is 'bona
fide' where it involves 'factual issues' rather than legal issues such as the statute's coverage and
applicability." *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)
(Robreno, J.) (internal quotation marks omitted). "A proposed settlement resolves a bona fide
dispute where the settlement's terms 'reflect a reasonable compromise over issues . . . that are

actually in dispute' rather than a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *Kraus*, 155 F. Supp. 3d at 530 (quoting *Lynn's Food*, 679 F.2d at 1355).

Here, the settlement resolves a bona fide dispute. Though Defendants never answered Plaintiff's Complaint, the Settlement Agreement states that "Paradocx absolutely denies any FLSA . . . violations." Rev. Settlement 2. A defendant's recital of such a denial of liability is evidence of a bona fide dispute. *See Howard*, 197 F. Supp. 3d at 778 (quoting *Lynn's Food*, 679 F.2d at 1355) ("[T]he Settlement Agreement's recital coupled with Defendant's continued denial of Plaintiff's allegations are sufficient evidence of a bona fide dispute to assure the Court that the proposed Settlement Agreement does not present a 'mere waiver of statutory rights brought about by an employer's overreaching.'").

Furthermore, the parties assert that the following facts are in dispute: the alleged number of unpaid hours worked by Plaintiff, the alleged amount of overtime worked by Plaintiff, and other damages incurred by Plaintiff.  Joint Mot. ¶ 15. These are factual disputes. As such, the settlement resolves a bona fide dispute.

**B.    The Proposed Settlement Is Fair**

Because the settlement resolves a bona fide dispute, the court must then conduct a "two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Kraus*, 155 F. Supp. 3d at 523.

*1.    The Settlement Is Fair and Reasonable*

At the first step, the court must assess whether the "settlement is fair and reasonable for the employee(s)." *Id.* Although the Third Circuit has not set out FLSA-specific criteria for district courts to use when assessing fairness and reasonableness, district courts have looked to

the *Girsh* factors that are used in evaluating the fairness of class action settlements under Federal

Rule of Civil Procedure 23. *Howard*, 197 F. Supp. 3d at 777 n.1. The nine *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157–58 (3d Cir. 1975) (citation omitted). "[S]ome of the *Girsh*

factors [are of] little help, if not irrelevant, in the single-plaintiff context." *Howard*, 197 F. Supp.

3d at 777 n.1. Thus, courts should not "mechanically apply[] *Girsh* simply because it is the

court's duty to assess whether the proposed agreement is fair and reasonable." *Id.*

  After reviewing the *Girsh* factors that are pertinent to a single-plaintiff FLSA settlement,

the proposed settlement is fair and reasonable.

  First, this settlement was reached after some documents were exchanged and counsel had

the multiple discussions. Joint Mot. ¶ 18. Thus, counsel had time to gain "adequate appreciation

of the merits of the case before negotiating." *In re Cendant*, 264 F.3d 201, 235 (3d Cir. 2001);

*accord Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993) ("[P]ost-discovery settlements

are more likely to reflect the true value of the claim and be fair.").

  Furthermore, Corona Corona's settlement recovery represents an adequate percentage of

his maximum conceivable recovery.  Corona Corona alleges that Paradocx owes him $8,764.62

in FLSA damages (consisting of $2,046.94 in lost wages for hours worked up to 40 hours per

week, $96.37 in lost wages due to unlawful wage deductions in his first week of work in 2019,

$2,239.00 in overtime wages for non-exempt overtime work, and $4,382.31 in liquidated

damages and attorneys' fees), plus $456.18 in unpaid inbound and outbound transportation and

subsistence expenses. Joint Mot. ¶ 5. This totals $9,220.80. *Id.* ¶ 21. Under the settlement,

Corona Corona will receive $7,500.00, representing $3,050.00 in alleged unpaid back wages less

applicable taxes, $2,780.00 in liquidated damages and other losses, and $1,720.00 in attorneys'

fees. Rev. Settlement 2. This sum represents just over 81% of his maximum conceivable

recovery. Joint Mot. ¶ 21. Under *Girsh*, "in cases primarily seeking monetary relief, the present

value of the damages plaintiffs would likely recover if successful, appropriately discounted for

the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re

GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995). There is no

magic number at which the percentage of recovery is deemed fair, although recoveries of less

than 80% have been regularly approved by courts within this district. *See, e.g.*, *Solkoff v.

Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 657 (E.D. Pa. 2020) (Robreno, J.) (approving

settlement providing plaintiff with 71% of his maximum compensatory damages); *Yong Li v.

Fam. Garden II, Inc.*, No. 5:18-CV-01325, 2019 WL 1296258, at *2 (E.D. Pa. Mar. 20, 2019)

(Leeson, J.) (approving a settlement awarding 70% recovery); *McGee v. Ann's Choice, Inc.*, No.

CIV.A. 12-2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014) (Schiller, J.) ("The settlement

amount of $27,455.57 represents 71% of Plaintiffs' total actual and liquidated estimated

damages, a figure that the Court considers fair and reasonable."). Here, Plaintiff's counsel has

acknowledged that there would be substantial expenses involved in continuing this litigation,

along with significant risks involved in not being able to establish damages given the challenges

in establishing an accurate record of hours worked. Joint Mot. ¶ 20. Given that Corona Corona's

recovery is in excess of his claimed lost wages, I find that the settlement amount is fair.

Finally, Corona Corona will avoid having to wait for a remedy after lengthy litigation and will avoid the risk of an adverse determination. In light of all these factors, the settlement is fair and reasonable.

*2. The Settlement Furthers Implementation of FLSA*

At the second step of the fairness inquiry, the Court must assess whether "the agreement furthers the FLSA's implementation in the workplace." *Kraus*, 155 F. Supp. 3d at 523. To make this determination, courts have looked at (a) the scope of the release or waiver provisions, (b) the presence and scope of confidentiality provisions, and (c) whether the parties attempted to file the settlement agreement under seal. *See Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, No. 16-2663, 2017 WL 2215264, at *3 (E.D. Pa. May 18, 2017) (Pappert, J.) (collecting cases analyzing whether settlements furthered FLSA implementation).

First, the scope of the release furthers implementation of the FLSA because its release provision is limited to the legal and factual basis of Corona Corona's complaint. The revised settlement agreement's release provision is limited only to breach of employment contract and wage-related claims under the FLSA, Pennsylvania Wage Payment and Collection Law, and the H-2A visa program. Rev. Settlement 3. The revised settlement agreement also states that, by signing, Corona Corona does not waive rights to claims of any reimbursement related to travel back to Mexico under any future contracts through the H-2A visa program. Rev. Settlement 4. This release is appropriately narrow and tailored to the claims in Corona Corona's complaint. *See, e.g.*, *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, No. 19-2569, 2020 WL 5554396, at *4 (E.D. Pa. Sep. 15, 2020) (Quiñones Alejandro, J.) (approving release that was "limited to claims that were raised or could have been raised in this lawsuit and wage-and-hour-related claims arising before the date of the proposed Settlement Agreement"); *cf., e.g.*, *Howard*, 197 F.

Supp. 3d at 779 (finding the scope of release overly broad when release applied to "any and all Claims that concern[] the termination of Plaintiff's employment with Defendant" because the release "exceed[ed] the legal basis of Plaintiff's Complaint (i.e., wage and hour statutory protection) as well as the factual basis of her Complaint (i.e., alleged retaliation by her employer after she filed complaints with its HR department about wage and overtime pay violations" (internal quotation marks omitted)). The agreement thus furthers implementation of the FLSA, while also remedying the Court-identified flaw in the parties' first proposed agreement.

Second, the settlement agreement does not contain a confidentiality provision, furthering implementation of the FLSA.

And third, the settlement agreement was publicly filed, also furthering implementation of FLSA.

As such, the proposed settlement agreement is fair and approval is proper.

## III.    APPROVAL OF ATTORNEY'S FEES

The revised settlement agreement provides for payment of $1,720.00 in attorneys' fees to Corona Corona's counsel, Ms. Virginia Halden of Philadelphia Legal Assistance.

The Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b). To determine the reasonableness of the fees, courts in this circuit have used both the percentage-of-recovery and the lodestar methods. *Compare Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001) (using lodestar method for individual FLSA action) *with Kraus*, 155 F. Supp. 3d at 533–34 (using the percentage of recovery method for individual FLSA action). "Percentage of recovery is the prevailing method used by courts in the Third Circuit for

wage and hour cases." *Kraus*, 155 F. Supp. 3d at 533 (citing *Keller v. TD Bank*, No. 12–5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014) (Restrepo, J.)).

When evaluating the fairness of an attorneys' fee award under the percentage of recovery method, courts must consider:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Only factors (3) through (7) are relevant when the suit in question was brought by an individual plaintiff. *Id.*

Here, Ms. Halden drafted the Complaint, engaged in limited discovery, and negotiated the settlement agreement. Ms. Halden spent more than 85 hours in representing Corona Corona in this matter. Joint Mot. ¶ 24. Should the Court approve the agreement, she would receive $1.720.00 in fees, which represents approximately 23% of the value of the settlement. In reviewing attorneys' fees allocated in private action FLSA settlements, judges in this district commonly approve attorneys' fees representing 30% to 45% of the total settlement recovery. *See, e.g.*, *Carney v. Travelers Aid Soc'y of Philadelphia*, No. CV 19-3599, 2020 WL 703684, at *4 (E.D. Pa. Feb. 11, 2020) (Baylson, J.) (approving attorneys' fees of 40% of total recovery in case where counsel engaged in no discovery); *Howard*, 197 F. Supp. 3d at 782 (approving attorneys' fees of 32.4% of total recovery in case where counsel spent 42 hours on the case); *Mabry v. Hildebrandt*, Civil Action No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (Jones, J.) (approving attorneys' fees of 40% of total recovery where counsel devoted 75 hours to the case and conducted limited discovery); *Lyons v. Gerhard's Inc.*, Civil Action No.

14-06693, 2015 WL 4378514, at *5 (E.D. Pa. July 16, 2015) (Pappert, J.) (approving attorneys' fees of 44% of total recovery where counsel had devoted 92 hours to the case and engaged in depositions and document discovery).

I find that counsel expended significant time in representing her client and in conducting limited discovery, and her requested share of the settlement is modest by the standards of this district. As such, the allocation of attorneys' fees in the settlement is fair.

## III. CONCLUSION

For the forgoing reasons, I will approve the parties' settlement agreement.


__s/ANITA B. BRODY, J._ _
ANITA B. BRODY, J.

## ORDER

**AND NOW**, on this 10th day of December, 2021,  it is **ORDERED** that the parties' Joint Motion for Approval of Settlement (ECF No. 11) is **GRANTED.**

This case is **DISMISSED** with prejudice and the Clerk of Court is **DIRECTED** to mark this case as closed.


_s/ANITA B. BRODY, J._____
ANITA B. BRODY, J.


Copies **VIA ECF**